# IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

VINCENT DERITIS,

*Defendant - Appellant.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

———————————

## REPLY BRIEF OF APPELLANT

———————————

Anne M. Hayes
ATTORNEY AT LAW
P. O. Box 4203
Cary, NC 27519
919-815-6247
hayesannemarg@aol.com

*Counsel for Appellant*

LANTAGNE LEGAL PRINTING
801 East Main Street Suite 100 Richmond, Virginia 23219 (804) 644-0477

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... ii

ARGUMENT AND CITATIONS OF AUTHORITY .............................................1

I.    Mr. Deritis' convictions for sexual exploitation of a child and possession of child pornography must be vacated where the jury instructions describing the charged crimes contained a flawed definition of "lascivious exhibition," permitting convictions based on images that did not depict sexually explicit conduct ...........................1

II.    Mr. Deritis' convictions on Counts 1 and 2 for sexually exploiting a minor must be reversed, because the evidence as to each count failed to show that a minor engaged in sexually explicit conduct .............5

III.    The district court erroneously excluded non-hearsay testimony that strongly exculpated Mr. Deritis ................................................................8

IV.    Remand is required for further consideration of Mr. Deritis' motion to suppress evidence obtained with an invalid search warrant, because the district court erroneously denied the motion without addressing the chief grounds for suppression, and the illegally obtained evidence was essential to the convictions on Counts 2 and 3 ........................................................................................17

V.    The district court plainly erred when it imposed the maximum assessment authorized under 18 U.S.C. § 2259A without considering statutory factors as required ..................................................19

CONCLUSION .......................................................................................23

CERTIFICATE OF COMPLIANCE .........................................................24

# TABLE OF AUTHORITIES

## Cases

*In re C.R. Bard, Inc., MDL No. 2187, Pelvic Repair Sys. Prod. Liab. Litig.*,
  810 F.3d 913 (4th Cir. 2016) ................................................................... 9

*McDonnell v. United States*,
  579 U.S. 550 (2016) .............................................................................. 2

*United States v. Benson*,
  957 F.3d 218 (4th Cir. 2020) ................................................................. 9

*United States v. Burgos*,
  94 F.3d 849 (4th Cir. 1996) ................................................................. 14

*United States v. Cohen*,
  63 F.4th 250 (4th Cir.), cert. denied, 144 S. Ct. 165 (2023) .............. 7

*United States v. Courtade*,
  929 F.3d 186 (4th Cir. 2019) ....................................................... 2, 3, 6

*United States v. Dawkins*,
  999 F.3d 767 (2d Cir. 2021) ............................................................... 11

*United States v. Diaz,*
  670 F.3d 332 (1st Cir. 2012) ......................................................... 11-12

*United States v. Dix*,
  69 F.4th 149 (4th Cir. 2023) ............................................................... 12

*United States v. Dost*,
  636 F. Supp. 828 (S.D. Cal. 1986) ................................................... 2-3

*United States v. Eisenstein*,
  731 F.2d 1540 (11th Cir. 1984) ............................................. 12, 13, 17

*United States v. Harvey*,
  885 F.2d 181 (4th Cir. 1989) ............................................................. 21

*United States v. Inadi*,
  475 U.S. 387 (1986) ........................................................................... 10

*United States v. Johnson,*
  79 F.4th 684 (6th Cir. 2023) ................................................. 9

*United States v. Kivanc,*
  714 F.3d 782 (4th Cir. 2013) ............................................... 11

*United States v. Kolhoff,*
  No. 22-4601, 2023 WL 6442529 (4th Cir. Oct. 3, 2023) ................... 7

*United States v. Lindberg,*
  39 F.4th 151 (4th Cir. 2022) ................................................. 2

*United States v. McLean,*
  715 F.3d 129 (4th Cir. 2013) ........................................... 9, 13

*United States v. McMiller,*
  954 F.3d 670 (4th Cir. 2020) .............................................. 22

*United States v. Mynes,*
  No. 21-4668, 2024 WL 277707 (4th Cir. Jan. 25, 2024) .................. 7

*United States v. Reed,*
  908 F.3d 102 (5th Cir. 2018) ............................................... 9

*United States v. Thomas,*
  451 F.3d 543 (8th Cir. 2006) ..............................................12

*United States v. Williams,*
  553 U.S. 285 (2008) ......................................................... 3

## Statutes

18 U.S.C. § 2251 ................................................. 2, 4, 5, 6, 7, 8
18 U.S.C. § 2252A ..................................................... 2, 4
18 U.S.C. § 2256 .................................................. 1, 2, 3, 4
18 U.S.C. § 2259A ............................................... 19, 20, 21, 22
18 U.S.C. § 2703 .................................................. 17, 18, 19
18 U.S.C. § 3553 ................................................... 19, 20, 22
18 U.S.C. § 3572 ............................................... 19, 20, 21, 22

## Rules

Fed. R. App. P. 32 ................................................................. 24

Fed. R. Evid. 404 ................................................................. 9

Fed. R. Evid. 801 ................................................................. 10

Fed. R. Evid. 803 ................................................................. 10

Fed. R. Evid. 804 ................................................................. 10

## Other Authorities

30B Charles A. Wright, et al., *Federal Practice and Procedure* § 6712 ................10

§ 2251(a) ................................................................. 2

§ 2252A(a)(5)(B) ................................................................. 2

## ARGUMENT AND CITATIONS OF AUTHORITY

I.    **Mr. Deritis' convictions for sexual exploitation of a child and possession of child pornography must be vacated where the jury instructions describing the charged crimes contained a flawed definition of "lascivious exhibition," permitting convictions based on images that did not depict sexually explicit conduct.**

The district court's jury instruction defining "lascivious exhibition" was prejudicially flawed. The flawed instruction permitted convictions based on images of mere nudity, so long as the photographer anticipated that a future viewer of the images would have a sexual response to the images. This definition conflates two separate statutory requirements – that a child participated in sexually explicit conduct, *i.e.*, a lascivious exhibition, and that a depiction of the sexually explicit conduct was produced or possessed. The instruction also is flawed because it implicates subjective intent. Additionally, Supreme Court precedent establishes that an exhibition is considered lascivious only if it involves patently offensive, hard core sexual conduct. Because the jury instruction permitted convictions for non-criminal conduct, Mr. Deritis' convictions must be vacated.

In his opening brief, Mr. Deritis explained that the instruction delivered by the district court conflicts with the statutory definition of "lascivious exhibition" (18 U.S.C. § 2256(2)(A)), because the parallel sentence structure used in the definition of "sexually explicit conduct" establishes that whether conduct meets that definition

cannot be dependent on whether the conduct is photographed, or on the response a viewer may have to the image created. Appellant's Opening Brief at 23. This Court "looks to the context in which the words appear" when defining words used in statutes. *United States v. Lindberg*, 39 F.4th 151, 174 (4th Cir. 2022) (citing *McDonnell v. United States*, 579 U.S. 550, 569 (2016) ("a word is known by the company it keeps")). Additionally, Mr. Deritis explained the instruction is inconsistent with requirements of the statutory offense charged in Counts 1, 2, and 3, because it conflates separate requirements for "sexually explicit conduct," and a purpose to produce a visual depiction of "such conduct" (§ 2251(a)). (A similar flaw affects the possession offense in Count 4 (§ 2252A(a)(5)(B)), which requires a visual depiction of sexually explicit conduct, *see* 18 U.S.C. §2256(8)(A)). Appellant's Opening Brief at 23-24.[1] The government has not addressed these textual arguments.

Instead, the government argues the jury instruction defining lascivious exhibition complies with *United States v. Courtade*, 929 F.3d 186, 191-92 (4th Cir. 2019). The instruction given by the district court is more expansive than the definition suggested in *Courtade*, however. Over Mr. Deritis' objection, the district court instructed the jury to consider the six factors identified in *United States v. Dost*,

---

[1]Appellant's Opening Brief did not specifically address the language pertinent to Count 4 in this context.

636 F. Supp. 828, 832 (S.D. Cal. 1986). JA624-625. The sixth *Dost* factor is "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." JA625.

*Courtade*'s suggested definition of lascivious exhibition does not incorporate the *Dost* factors. Instead, the Court expressly declined to "venture into the thicket surrounding the *Dost* factors." *Courtade*, 929 F.3d at 192. It also acknowledged controversy over the sixth *Dost* factor, stating, "Particularly divisive has been the sixth factor, which potentially implicates subjective intent and asks whether the depiction is intended or designed to elicit a sexual response in the viewer." *Id*. Supreme Court precedent establishes that a defendant's subjective intent has no place in determining whether conduct qualifies as lascivious exhibition, as used in § 2256(2)(A). *United States v. Williams*, 553 U.S. 285, 301 (2008) (to qualify as a depiction of lascivious exhibition, the "material in fact (and not merely in [the defendant's] estimation)" must meet the statutory definition). The district court's instruction to consider the *Dost* factors therefore cannot be justified by reliance on *Courtade*.

We also respectfully assert that, to the extent the jury instruction tracked language used in *Courtade*, it conflicted with the statutes defining lascivious exhibition and describing the proscribed conduct. *See* Appellant's Opening Brief at

23-24. Because the district court's definition conflates the two statutory requirements – (1) that a child participated in a sexually explicit conduct, *i.e.*, a lascivious exhibition, and (2) that the photographer had the purpose of producing a depiction of the sexually explicit conduct or that a depiction exists – it broadens the range of conduct that can lead to conviction beyond the bounds set by the governing statutes.

Finally, we note that the definition of "lascivious exhibition" is under consideration in at least one other case pending in this Court *(United States v. Sanders*, 4th Cir. No. 22-4242, set for oral argument on March 22), and is the subject of multiple petitions for writ of *certiorari* to the Supreme Court, *e.g.*,

- *Donaho v. United States*, S. Ct. No. 23-803, question presented: "Does a defendant produce a depiction of a minor engaging in 'lascivious exhibition,' and thus 'sexually explicit conduct' under 18 U.S.C. § 2251(a), by secretly recording a nude minor engaging in ordinary daily activities, when the videos and images depict absolutely no sexual or sexually suggestive conduct of any kind?"

- *Boam v. United States*, S. Ct. No. 23-625, question presented: "Does a defendant produce or possess a depiction involving the use of a minor engaging in 'lascivious exhibition,' and thus 'sexually explicit conduct,' under 18 U.S.C. §§ 2251(a), 2252A, and 2256(2)(A), by secretly recording a nude

minor showering or engaging in ordinary grooming activities, when the video depicts absolutely no sexual or sexually suggestive conduct of any kind?"

• *Kolhoff v. United States*, S. Ct. No. 23-6481, question presented: "Did this impermissible expansion of the scope of the federal child pornography statutes [to include depictions of "'mere nudity' and 'mere pictures of genitals,'" without "any overt sexually explicit activity"], in direct contravention of both the holdings of this Court and the plain language of the controlling statutes, deny Ms. Kolhoff her Due Process rights to a fair trial and the constitutional protections requiring criminal laws to explicitly and definitely identify what conduct is punishable?"

The district court erred when it defined "lascivious exhibition" with respect to all counts of conviction. Accordingly, Mr. Deritis' convictions must be vacated.

## II. Mr. Deritis' convictions on Counts 1 and 2 for sexually exploiting a minor must be reversed, because the evidence as to each count failed to show that a minor engaged in sexually explicit conduct.

Mr. Deritis was convicted on Count 1 of violating 18 U.S.C. § 2251(a) by placing a camera on a bathroom counter so it would capture images of a minor.[2] At trial, the government admitted images of a minor entering and/or exiting the shower and toweling off. JA944-949, JA993, GX 64-72. Mr. Deritis was not present when

_____

[2]Mr. Deritis denies he intended to capture images of the minor.

the images were captured. After initially placing the camera on the bathroom counter, he did not manipulate the placement or angle of the camera. Neither did the evidence show he issued any instruction to the minor, either to use the bathroom in the first instance, or to stand in specific places or strike particular poses. Once the images were captured, there is no evidence that Mr. Deritis shared the images with any other person.

This conduct falls squarely within the definition of voyeurism. *See* https://www.merriam-webster.com/dictionary/voyeurism, defining voyeurism as "the criminal act of surreptitiously viewing a person without their consent in a place where the person has a reasonable expectation of privacy (such as a home or public bathroom) or of using a device (such as a camera) for the purpose of such viewing." Mr. Deritis established in his opening brief that, under *United States v. Courtade*, 929 F.3d 186, 191 (4th Cir. 2019), evidence of voyeurism is insufficient to support a conviction under § 2251(a). Appellant's Opening Brief at 26-31. *Courtade* distinguishes between conduct that consists of passive voyeurism and conduct that involves the active intervention by a defendant.

In reliance on a disputed definition of "lascivious exhibition" (*see* Argument I), the government argues "the factfinder may consider the 'context' of images when determining whether they were designed to sexually stimulate the viewer." Appellee's

Brief at 59 (citing *United States v. Mynes*, No. 21-4668, 2024 WL 277707, at *3 ( 4th Cir. Jan. 25, 2024) (unpublished); *United States v. Kolhoff*, No. 22-4601, 2023 WL 6442529, at *2 (4th Cir. Oct. 3, 2023) (unpublished); and *United States v. Cohen*, 63 F.4th 250, 256 (4th Cir.), *cert. denied*, 144 S. Ct. 165 (2023). *Courtade* establishes that, regardless of any other context, a conviction under § 2251(a) requires active conduct on the part of the defendant rather than mere voyeurism.

In each of the cases cited by the government, the conduct underlying the conviction met the *Courtade* requirement, because the defendant posed the subject of the image and/or actively manipulated the camera while the image was created. By doing so, the defendant ensured that the scene being photographed involved the lascivious exhibition of the subject's genitals or pubic area; the exhibition did not become lascivious by virtue of image being captured. *See Mynes*, 2024 WL 277707, at *4 (Mynes took a series of images of a seven-year-old while she sat on a couch without underwear, and he focused on her fully-exposed vagina); *Kolhoff*, 2023 WL 6442529, at *2 ("The photographs in this case were staged to focus on the infant's genitals and anus and involved manipulation of the infant's body so that these body parts would be more visible."); *Cohen*, 63 F.4th at 256 (Cohen apparently posed for and/or took a photo of his own penis, which he later possessed in violation of a condition of supervised release).

The government also argues that if the evidence does not suffice to prove a completed offense, the Court should affirm the § 2251(a) conviction on the theory that Mr. Deritis attempted to violate the statute. Appellee's Brief at 62-63. The Court should reject this suggestion. The record does not support a finding that Mr. Deritis intended, but failed, to capture images that met the definition of lascivious exhibition. Assuming for the sake of this argument that Mr. Deritis intentionally captured the nude images of the minor, there is no basis for finding that he intended (or reasonably could have expected) to capture images that depicted anything more explicit than simple nudity. The government failed to present sufficient evidence to prove a completed crime, and it also failed to prove an incomplete attempt crime.

For these reasons, the evidence does not suffice to support Mr. Deritis' conviction on Count 1, and the conviction must be reversed.[3]

## III. The district court erroneously excluded non-hearsay testimony that strongly exculpated Mr. Deritis.

Mr. Deritis established in his opening brief that the district court made an error of law when ruled that an out-of-court command made by Mr. Deritis was hearsay. Appellant's Opening Brief at 36-40. The government's responsive argument is legally and factually flawed. Appellee's Brief at 41-48.

---

[3]With respect to the insufficiency of the evidence supporting the conviction on Count 2, Mr. Deritis rests on his opening brief. Appellant's Opening Brief at 64-66.

First, the government mistakenly asks the Court to review this error for abuse of discretion. Appellee's Brief at 41. The issue presented is whether an out-of-court statement consisting of a command or instruction was hearsay. While this Court reviews discretionary decisions about the exclusion of evidence for abuse of discretion, "legal conclusions concerning the Federal Rules of Evidence" are reviewed "*de novo*." *United States v. Benson*, 957 F.3d 218, 228 (4th Cir. 2020); *accord In re C.R. Bard, Inc., MDL No. 2187, Pelvic Repair Sys. Prod. Liab. Litig.*, 810 F.3d 913, 923 (4th Cir. 2016) (the Court reviews the district court's interpretations of the Federal Rules of Evidence *de novo*). Applying this principle, a determination that certain evidence constitutes hearsay must be reviewed *de novo*. *United States v. Johnson*, 79 F.4th 684, 700 (6th Cir. 2023); *accord United States v. Reed*, 908 F.3d 102, 120 (5th Cir. 2018) ("We review *de novo* the district court's legal conclusion about whether a statement is hearsay.").

The government cites *United States v. McLean*, 715 F.3d 129, 144 (4th Cir. 2013), in urging the Court to apply the abuse of discretion standard. Its reliance on *McLean* is misplaced. In *McLean*, the Court reviewed a district court's weighing of factors under Fed. R. Evid. 404(b). The weighing of relevant factors is a prototypical exercise of discretion. Here, the district court made a legal ruling that is subject to *de novo* review.

Second, the government mistakenly asserts that Mr. Deritis, as the proponent of the out-of-court statement, "'had the burden of showing the applicability of an exception or exemption to the hearsay prohibition.'" Appellee's Brief at 42 (quoting 30B Charles A. Wright, et al., *Federal Practice and Procedure* § 6712). This argument is flawed, because Mr. Deritis has not argued that an exception or exemption to the hearsay rule applies.[4] Instead, he asserts that the proffered evidence is *not* hearsay. Thus, the government bore the burden of showing the statement, whose relevance is not contested, was hearsay. This rule is stated in the treatise quoted by the government: "[T]he party opposing relevant evidence bears the burden of persuasion on the question of whether the evidence constitutes 'hearsay' as that terms is defined in Rule 801(c)." 30B Charles A. Wright, et al., *Federal Practice and Procedure* § 6712. Thus, the government rather than Mr. Deritis had the burden of persuasion on the legal issue presented.

Third, the government argues Mr. Deritis' command to his ex-wife not to allow the minor to use the bathroom contained "an assertion of fact" and that the command was "offered for its truth." Appellee's Brief at 43. The government is mistaken.

---

[4]Hearsay exemptions are listed in Fed. R. Evid. 801(d). *See United States v. Inadi*, 475 U.S. 387, 399 n.12 (1986) (identifying the co-conspirator rule of Fed. R. Evid. 801 as an exemption from the hearsay rule). Hearsay exceptions are listed in Fed. R. Evid. 803 and 804.

In seeking to elicit testimony about the statement, defense counsel asked, "[T]here was a time when [Mr. Deritis] had told you not to allow [the minor] to use that bathroom, right?" JA485. The statement attributable to Mr. Deritis would accurately be paraphrased as: Do not allow the minor to use the master bathroom.

This statement contains no statement of fact. Its probative value lies exclusively in the fact that the statement was made, and not in the truth or falsity of any factual assertion. The government argues the excluded statement was offered to prove the assertion that "the bathroom was 'the one room in the house [the minor] was not allowed in.'" Appellee's Brief at 43. But that assertion does not appear in the excluded statement. Instead, it is an inference that can be drawn based on the fact that the command was issued.

For these reasons, the general rule that out-of-court statements consisting of directions or commands are not hearsay compels the conclusion that the statement should not have been excluded. *See, e.g.*, *United States v. Dawkins*, 999 F.3d 767, 789 (2d Cir. 2021) ("The statement '[d]o not accept money from these people' was an order, *i.e.*, an imperative rather than a declarative statement, and it was offered not for its truth, but for the fact that it was said. It was therefore not hearsay."); *accord United States v. Kivanc*, 714 F.3d 782, 793 (4th Cir. 2013); *United States v. Diaz*, 670

F.3d 332, 346 (1st Cir. 2012); *United States v. Thomas*, 451 F.3d 543, 548 (8th Cir. 2006).

Finally, the government argues that the exclusion of this powerfully exculpatory evidence was harmless. The government, as the beneficiary of the district court's error, "bears the burden of establishing that the error was harmless." *United States v. Dix*, 69 F.4th 149, 152 (4th Cir. 2023). Contrary to the government's argument, the exclusion of this evidence seriously impaired Mr. Deritis' ability to present his defense.

The government first asserts that the testimony sought from Mr. Deritis's ex-wife would have been harmlessly cumulative, because Mr. Deritis testified to the same fact. Appellee's Brief at 44. A ruling that impairs a defendant's ability to present a defense by excluding evidence that corroborates his tesimony is not harmless. In *United States v. Eisenstein*, 731 F.2d 1540, 1546 (11th Cir. 1984), this Court reversed a defendant's conviction where the district court excluded testimony that would have corroborated the defendant's testimony. There, the defendant testified about an out-of-court conversation that were material to his defense. *Id*. The district court improperly excluded another witness's corroborative testimony about the conversation. *Id*. This Court held, "The trial judge's failure to permit this highly relevant testimony cannot be dismissed as harmless error." *Id*. The Court stated that,

although the defense that was presented might have been weak because it was based on an unrealistic premise, the defendant was entitled to present evidence to corroborate his testimony. *Id*. The same result is compelled here, where Mr. Deritis was the only witness who testified that he had directed his ex-wife not to let the minor use the bathroom.

In support of its claim that the excluded testimony would have been harmlessly cumulative, the government cites *United States v. McLean*, 715 F.3d 129, 144 (4th Cir. 2013). *McLean* did not address a defendant's effort to elicit evidence to corroborate his own testimony. Instead, in *McLean*, the district court initially excluded a journal article about a specific medical study but later permitted the defense to elicit a government's witness's testimony about the same study. This Court held that any error in excluding the journal article was harmless due to the admission of the testimony. In *McLean*, there was no qualitative difference between the excluded evidence and the admitted evidence. In contrast, corroboration of Mr. Deritis' testimony would have strengthened his defense significantly. By excluding the testimony of Mr. Deritis' ex-wife about the instruction he gave her, the district court precluded Mr. Deritis' from offering strong substantive evidence of his innocence on Count 1.

Also important, it is likely that the exclusion of this corroborative evidence led the jury to perceive Mr. Deritis' testimony as self-serving and to deem it incredible on that basis. The impact of a negative credibility finding can be devastating. This Court has held that if a jury disbelieves a defendant's testimony, it is "entitled to consider whatever it concluded to be perjured testimony as affirmative evidence of guilt." *United States v. Burgos*, 94 F.3d 849, 868 (4th Cir. 1996) (en banc). Applying this principle to Mr. Deritis' case, the exclusion of the corroborative, exculpatory testimony may have led the jury to convict Mr. Deritis of the offense charged in Count 1 strictly on the basis of his own exculpatory testimony. Moreover, if the jury made a negative credibility finding against Mr. Deritis on this issue, that finding may have infected jury deliberations on all charged offenses.

The government also argues the exclusion of the evidence at issue was harmless because Mr. Deritis may have issued the instruction to his ex-wife after the image underlying Count 1 was captured. Appellee's Brief at 44. The record does not support this conjecture. It is notable that the government did not cross-examine Mr. Deritis on this point after he testified that he instructed his wife not to allow the minor to use the bathroom. The government cannot meet its burden of showing harmlessness through speculation.

Finally, the government argues exclusion of testimony that would have exculpated Mr. Deritis and bolstered his credibility was harmless because the government's case was strong, and Mr. Deritis's defense was weak. Appellee's Brief at 45-46. The record does not support this assessment.

At trial, Mr. Deritis vigorously disputed evidence and possible inferences advanced by the government in support of its theory that Mr. Deritis intentionally captured images of the minor in the bathroom. For example, Mr. Deritis testified and disputed the forensic analyst's testimony that Mr. Deritis had viewed the video containing the bathroom images shortly after it was made and that he viewed it several times thereafter. JA1088-1093. Had the jury credited this testimony, it would have undermined the government's theory that Mr. Deritis intentionally made the video for his later use.

Mr. Deritis strongly disagrees with the government's argument he "did not deny viewing the video multiple times over a period of months before deleting it," and that he did not "assert that he 'got rid of' the recording before he knew officers were at his door." Appellee's Brief at 46 (citing JA1088-1093). In the cited testimony, Mr. Deritis testified he had expected to capture video of him and/or his wife when he placed the camera in the bathroom. JA1088. He testified he plugged the camera into the computer, not knowing "what was on there if anything was on there."

JA1089. Mr. Deritis further testified that he was unable to access the video, or even thumbnails of the video, when he tried to view it on the computer he had when the video was made. JA1089-1091. He testified this problem persisted even when he tried to convert the video to different formats. JA1091. Later, he built a new computer and transferred over files from the old computer. JA1092-1093. He testified he had not seen the images at that point. JA1093. He testified he finally came across the images when he was organizing files on the new computer. JA1092. He testified, "I finally came across it during the new computer and I was like, oh, this is a problem," so he "got rid of them." JA1092. At trial, the prosecutor must have construed Mr. Deritis' testimony as a denial that he had viewed "the video multiple times over a period of months, because she called the forensic analyst as rebuttal witness to counter this testimony. JA1130-1131.

Mr. Deritis also testified about his suicide attempt and explained that he was motivated not by guilt, but by fear his wife would misconstrue the situation and leave him. JA540-541. Had the jury credited this testimony, it would not have viewed the suicide attempt as evidence of guilt.

In short, the government's case was vigorously contested. Admission of the disputed testimony would have bolstered Mr. Deritis' credibility and increased the likelihood that the jury would have rejected testimony about his purported access of

the video, as well as the government's assertion that the suicide attempt pointed to guilt. Had Mr. Deritis' defense not been impaired, there is a reasonable likelihood that he would have prevailed.

Such a showing is not necessary to show prejudice, however. The impairment of Mr. Deritis' ability to present his defense constituted prejudice that precludes a finding of harmless error, regardless of the relative strengths of the government and defense cases. *Eisenstein*, 731 F.2d at 1546.

Because the district court erred in excluding strong, exculpatory evidence, Mr. Deritis' convictions must be reversed.

**IV.** **Remand is required for further consideration of Mr. Deritis' motion to suppress evidence obtained with an invalid search warrant, because the district court erroneously denied the motion without addressing the chief grounds for suppression, and the illegally obtained evidence was essential to the convictions on Counts 2 and 3.**

Mr. Deritis established in his opening brief that the district court erred when it denied his motion to suppress Google account data obtained with a search warrant. An unreasonable period of delay elapsed before the government sought a warrant for evidence that had been seized by means of a preservation letter issued under 18 U.S.C. § 2703(f). Appellant's Opening Brief at 41-45.

The district court denied the suppression motion exclusively on the basis of its conclusion that the Google account was not seized when it was preserved. JA783-

786. Mr. Deritis challenges this conclusion on appeal. In response, the government asserts a variety of legal issues that were not addressed in the district court's order. Specifically, the government argues that there was an independent source for the evidence covered by the preservation letter (Appellee's Brief at 28-30), that Google was not a government agent when it preserved an account at the formal request of the government (Appellee's Brief at 30, 32-33), and that the government reasonably acted in reliance on 18 U.S.C. § 2703(f) and the untimely search warrant (Appellee's Brief at 38-40). The government's reliance on legal theories that were not addressed by the district court demonstrates the need for a remand to permit a full consideration of Mr. Deritis' arguments in support of suppression.

To the extent that the government addresses whether the preservation letter effected a seizure, the government analogizes to general record-keeping requirements that apply to taxpayers, gun dealers, and banks. Appellee's at 31-32. These requirements are not reasonable analogs to the preservation letter at issue here. The statutes cited by the government apply universally and automatically to documents held by persons or entities within certain categories. In contrast, the preservation letter singled out Mr. Deritis' account and required Google to act affirmatively to treat his account differently from most by keeping his account information intact. This same fact undermines the government's argument that Google did not act as a

government agent. Indeed, the language of § 2703(f)(1) establishes the agency relationship. It states that "upon the request of a government entity," a service provider "shall take all necessary steps to preserve records and other evidence...." *Id*. Google's preservation of Mr. Deritis' account was neither compelled by a generalized legislative provision nor undertaken on Google's own initiative. It was undertaken at the express request of a government agent who was pursuing Mr. Deritis' prosecution.

For these reasons, and the reasons stated in Appellant's Opening Brief at 41-45, the district court's premature denial of the suppression motion must be reversed.

**V.     The district court plainly erred when it imposed the maximum assessment authorized under 18 U.S.C. § 2259A without considering statutory factors as required.**

Mr. Deritis established in his opening brief that the district court failed to comply with a statutory mandate to consider specific, enumerated factors listed in 18 U.S.C. §§ 3553(a) and 3572 before imposing a $117,000 assessment under 18 U.S.C. § 2259A, resulting in plain error. Appellant's Opening Brief at 45-50.

The government asks the Court to affirm the district court's decision on the grounds that the district court took into account one of numerous statutory factors it was required to consider: the seriousness of Mr. Deritis' offense (*see* § 3553(a)(2)(a)). Appellee's Brief at 67. Contrary to this argument, the record does not reflect the

district court's consideration of this factor in the context of imposing the $117,000 assessment. Instead, it addressed the seriousness of the offense in the context of determining the length of Mr. Deritis' custodial sentence. *See* JA1289-1293. Moreover, even if the district court's consideration of one of the § 3553(a) factors may have informed its imposition of the § 2259A assessment, the assessment still would be reversibly flawed due to its disregard of *any* factor listed in § 3572.

The government also argues the district court's failure to consider Mr. Deritis' financial circumstances is of no moment where Mr. Deritis "would likely be able to pay at least a limited amount when released." Appellee's Brief at 67. This argument overlooks a plain statutory requirement. The first item § 3572 lists for consideration is "the defendant's income, earning capacity, and financial resources." § 3572(a)(1). The statute thus requires consideration of a defendant's ability to pay the assessment imposed. The PSR reflects earnings of $936 for 2017 and $3,675.66 for 2018. JA1242. Moreover, the PSR states Mr. Deritis "does not appear to have the resources to make an immediate monetary payment." JA1242. The PSR states that "it appears [Mr. Deritis] should be capable of making a minimum payment of $50 per month" after his release, based on the expectation that he "will be gainfully employed on a full-time basis." JA1242. The expectation of full-time employment likely is overly optimistic, given Mr. Deritis' projected release at the age of 72. But assuming Mr.

Deritis can pay $50 monthly, it would take more than 300 years to pay his criminal monetary penalties totaling $184,249 (a $400 special assessment, $6,849 in restitution, and the $177,000 assessment under § 2259A). JA702.

The government also argues there is no plain error, because the district court was not required to make findings about the § 3572 factors. Appellee's Brief at 69. But *United States v. Harvey,* 885 F.2d 181, 182 (4th Cir. 1989) (construing a predecessor statute), requires the district court to "make specific fact findings" on factors listed in § 3572. *Harvey* establishes the broad rule that, even when the terms of a statute imposing a financial penalty do not "require[] the district court to make specific findings with regard to the listed factors, such findings are as essential to effective appellate review" of the financial penalty imposed. *Harvey*, 885 F.2d at 183. This broad rule encompasses § 2259A assessments, because the statute lists statutory factors that must be considered. *Harvey*'s holding is settled law, and it applies in this case. The government also suggests the *Harvey* rule should not apply if a defendant does not dispute the financial penalty. Appellee's Brief at 69. The government's argument that Mr. Deritis did not preserve this issue determines the standard of review; it does not erase the existence of an error.

Finally, the government argues there is no reasonable probability that the district court would have imposed a lesser assessment if it had made express findings

addressing the statutorily mandated considerations. Appellee's Brief at 69-70. Mr. Deritis disagrees. The exercise of making the required findings would have compelled consideration of the factors mandated by statute, and there is a reasonable probability that consideration of Mr. Deritis' earnings capacity and resources would have led the district court not to impose a $117,000 assessment. In any event, Mr. Deritis is prejudiced because he has been subjected to a harsh financial penalty in a manner that precludes meaningful appellate review. *Cf. United States v. McMiller*, 954 F.3d 670, 677 (4th Cir. 2020) (When a court's explanation for lifelong special conditions of supervised release "is so lacking that it deprives the defendant of meaningful appellate review, that error necessarily affects the defendant's substantial rights.").

Because the district court did not consider or make findings required under § 2259A(c) regarding the factors listed in §§ 3553(a) and 3572, the imposition of the $117,000 assessment must be vacated.

## CONCLUSION

Appellant Vincent Deritis submits that the Court should reverse his convictions and/or otherwise grant relief as requested in this brief.

Respectfully submitted,

/s/ Anne M. Hayes
Anne M. Hayes
Attorney for Appellant
P.O. Box 4203
Cary, NC 27519
Telephone No. (919) 815-6247
Facsimile No. (919) 439-6384

# CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS

1.  ***Type-volume limitation*:**  This reply brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(A) because it contains 5,095 words.

2.  ***Typeface and type style requirements:*** This reply brief complies with the type face requirements of  Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using WordPerfect in 14-point New Times Roman.

/s/ Anne M. Hayes
ANNE M. HAYES